Okay, let's take up our 11 o'clock case, Brown-Wright v. East St. Louis District 189. Please proceed, counsel. Thank you. May it please the court, my name is Brian McCarthy. I represent the appellant, Daphne Brown-Wright. In my appeal brief, and below, she's the plaintiff, and that's how I'll refer to her in my argument today. This case involves a policy enacted by the Board of Education for East St. Louis School District 189. The policy is found in its board policy manual in section 5-120. I'll refer to that as policy 5-120 throughout the argument. The heading of that policy is resignations, and the subheading is severance pay for administrators, and the complete text of the policy is found in the common law record. That policy states in rather specific and direct language that the administrator upon retirement shall be paid accumulated sick leave, and then the policy specifies the rate at which the sick leave is to be paid as a form of severance. And section 5-120, that specific section, was enacted by the board for School District 189 in 2006, and the board had a prior policy providing severance to retiring administrators as early as October of 2002. The relevant facts that are most germane to the argument are these. The plaintiff retired with having more than 30 years of service to School District 189. She worked as a teacher for 25 years, and then from the fall of 2002 until her retirement in June of 2012, she worked as an administrator. She was a principal. So she has more than 30 years of service to School District 189. She provides her notice that she's going to resign at the end of June in 2012. And on June 20 of 2012, in contemplation of her retirement, she makes written demand for the severance under the policy 5-120. That's in effect at that time. District 189 denied her demand for the severance by sending her a letter on July 26, 2012. She files lawsuit seeking to have the severance paid pursuant to policy of the district in June of 2014, and the present Second Amendment complaint was filed on December 15, 2014. In her Second Amendment complaint, the plaintiff sets forth claims for promissory estoppel, for breach of an implied contract, and also a claim under the Wage Payment and Collection Act. The defendant district filed a motion to dismiss the Second Amendment complaint, and that was argued to the trial court on April 14. And following that argument on April 14, the trial court entered a motion that dismissed all three counts of the Second Amendment complaint, and then plaintiff thereafter filed a timely notice of appeal to bring the matter to this court. In the complaint, the plaintiff is seeking to have the severance benefit paid to her that's provided for in policy 5-120. Her pleading for promissory estoppel alleges that through the enactment of, and the promulgation of, and the distribution of the policy 5-120 within the policy manual, that the defendant district was making an unambiguous promise to its administrators that upon retirement they would receive a severance of a specific value. Plaintiff further alleges that she relied on that promise. The promise, because of the context of how it was promulgated and provided to administrative employees, the reliance of plaintiff and anybody else that was a retiring administrator was expected and foreseeable. And plaintiff, in fact, relied on that promise to her detriment. In the course of pleading promissory estoppel, obviously a question is always whether reliance is reasonable or justifiable. The defendant, in its motion to dismiss with regard to the promissory estoppel claim, indicated that the plaintiff's reliance was, in fact, impossible. And the argument that the defendant made is that plaintiff could not have relied on a policy that was enacted and promulgated and distributed in 2006 if she returned to the employment with the district as an administrator in 2002. I believe that that argument, which had traction at the trial court level, but I believe it's a red herring. And I pointed out to the trial court, and I point out to this appellate court, that the allegation that plaintiff made with regard to her reliance on that specific policy was that she continued with her employment after the policy was promulgated, enacted, and distributed to employees. She was in a codification, is what you argued. Excuse me, Your Honor. Rather than a codification of what had been done? Well, that's not alleged. Okay, okay. I didn't know if it was. It was not alleged in the pleading. It may be or it may have been simply an update of a prior codified policy. In any event, what was alleged was that she relied on that policy, the specific policy, 5120, in continuing her employment. And I believe that when there is an enactment of a policy that provides something of value to an employee and they continue to work, that that would satisfy their reliance for purposes of promissory estoppel much as it would to show consideration in a claim under contract, under implied-in-fact contract, where the party's actions satisfy offer and acceptance. I've made that argument in the brief, and I do want to emphasize that to this tribunal. With regard to implied contract, what this plaintiff is alleging is that it was the policy constituted an offer and her acceptance, again, similar to what I have said with regard to promissory estoppel, her acceptance was her continuing work in service to the district. With regard to the implied contract, the defendant district stated at the trial court level and repeats in its brief to this court that implied contract is not recognized against municipal entities. I submit, and in my brief, submit the cases that show that a contract implied, an implied contract, in fact, those are the basis for liability against a municipal corporation. I submitted the case of Wood v. Wabash County, a 5th district case from 1999, which was, which very much the court considered a claim of implied contract against a municipal entity and found that that certainly is a possibility to the extent that the defendant has argued that there is simply a broad prohibition against recognizing such implied contracts against municipal entities. May I ask you, counsel, the appellee cites the Howard case on the implied contract issue. Would you address that, and do you believe that it's authority or can be distinguished? I believe it can be distinguished, Your Honor. Howard and the cases that Howard relies on all involve contracts implied at law opposed to a contract implied in fact. Those, in those cases, the court indicated that its holdings are applicable against finding a contract because the means by which the contract, as alleged, was offered to the plaintiffs were ultra viris or beyond the authority of either the agent or the municipal body to offer. And again, the brief that I have submitted indicates the cases and the correct view of those cases as being distinguishable and not actually addressing what the plaintiff has pled in her case, which is an entirely different type of claim. It's more in the means of a contract opposed to a contract implied at law, which is more in the sense of a remedy. So I do believe it's distinguishable on that ground. In addition, I believe that the defendant district has indicated that if, in fact, a contract implied was offered or could be offered by the district, that the plaintiff did not accept what was offered. And again, their argument goes to how could she have accepted it because that policy came into effect after she returned to work for the district as an administrator. And again, I would say that her acceptance was her continuing to work after the promulgation of the policy. The plaintiff has also pled a claim under the Wage Payment and Collection Act. With regard to that pleading, the essence of a claim under the Wage Payment Act is that there is an agreement or a contract that exists between the employer and the employee as regarding compensation. The cases that are cited on behalf of plaintiffs indicate that the idea of an agreement is much more broad and encompassing than that of a contract and that the hallmark of what an agreement is is whether the parties have mutually assented to terms with regard to payment of compensation. Of course, the mutual assent on that issue is, in fact, the policy. And in that regard, it is the specificity with which the policy speaks to the severance that has been offered. In that way, it is clear that there are certain conditions that have to be met. It is clear that the amount or the value of the benefit of the severance is determined according to a schedule that's set forth precisely in the policy. So the specificity and the precision of the policy indicate that the parties were clear about what was being offered and accepted. And in that sense, that certainly comes within the type of agreement that is covered by the Wage Payment and Collection Act. The defendant district, of course, argued that the policy cannot be the basis for a contract or agreement. But to the extent of the specificity of that policy, to the extent that the plaintiff worked and continued to work and provide service to the district under that policy and then requested that benefit shows that there was mutual assent as to those terms. In regard to this appeal, I would simply say that Policy 5120 is not a promise upon which an administrative employee of the district would and could rely. And if Policy 5120 is not specific or precise enough to constitute an offer to contract, then what is it? What would have been the purpose for the district to include a policy with such specificity directed specifically to its administrative employees at the time of their retirement other than a request to give them a benefit that vested after a period of service? That, in my mind, is an offer. That, in my mind, is a promise. That is a benefit that is being conveyed to the employee to induce them to remain and provide service to the district, which is what my client did. I hope that that is a question that this Court considers in connection with the review of that policy and a review of what the plaintiff has pledged. I would spend a brief amount of time just to mention that in my brief, I did bring up the question of whether the defendant's motion to dismiss is properly considered under Section 2615 or as the motion itself indicated under Section 2619A9. I don't think it makes a practical difference in terms of the outcome to this Court. I believe the review is de novo. I believe that the Court will assume that the facts well-fled are, in fact, true for the purposes of handling its review. So I don't know that there's much profited by it. I pointed it out in the brief only insofar as 2619 would suggest that there was some affirmative matter brought forth that would have negated the claim. But the affirmative matter is really legal arguments as to the sufficiency of the pleading. And very clearly, the way it operated was that the motion to dismiss was considered by a court strictly as whether a plaintiff pled her three claims properly. So it really was strictly on the pleading. There was not an affidavit that added extraneous or extrinsic matter to the Court's consideration. So I think the issue of review is rather minor. I think the Court will handle that review under the appropriate standard, regardless of how it looks at that. What was the plaintiff's last day of work? She would have worked through the end of – her last day would have been June – the last day of June 2012. So I'll say it was June 30th. I don't know whether in the school district they actually work beyond when the students are in school, and I don't know that. If the Court has any other questions, I'd appreciate the opportunity to answer them. Thank you, Counsel. Thank you. May it please the Court, Counsel. My name is Garrett Warner. I'm here on behalf of Defendant DeFellini, St. Louis School District No. 189. And we're here on a circuit court order granting a motion to dismiss. The motion to dismiss was filed alternatively on grounds under 2615 for a failure to save cause of action, and also for under 2619, the affirmative matter being the policy itself. Now, for purposes of your review, obviously it is the noble review, and Counsel has chose to stand on the pleading rather than seek amendment under 2615. So we're really here for this Court to determine the sufficiency of the complaint either way. Now, of course, while the defendant disputes much of what is alleged in the complaint for our purposes here and for purposes of the trial court, we accepted those matters as true. But I think by way of background, it would be helpful to look at the various types of employment that you see with certified staff in school districts. First, you have teachers who are offered parties to a collective bargaining agreement, like we saw in the case earlier today. Then you have administrators who may have a written employment contract that sets forth the terms of their employment. And then you have teachers that are simply governed by, their employment is governed by the provisions of the school code. So in this case, what do we accept as true? The allegations in the complaint suggest that the plaintiff was a teacher in the school district from September 1975 to September 1995, or 1999. Then she departed and apparently was employed elsewhere. She returned as an administrator in August of 2002 and retired in June of 2012. So there are no allegations that she's a party to a collective bargaining agreement. There's no allegations of a written employment contract. So then there are no allegations that there's been a violation of the provisions of the school code that would apply. For instance, 10-23.8 of the school code provides for one year terms for administrators. Or if there's a performance-based contract with performance goals and objectives, it's two to five years. There are notice provisions for non-renewal under 10-23.8B. There are tenure provisions for administrators to become tenured as a teacher after four years. There are termination provisions. None of that is brought forth in the complaint. This complaint is solely based upon a Board of Education policy, and it's 5.210, and it's part of the appendix of the record. So when we look at what this is based on, what we're here to determine, I believe, in this court, what's before this court, is are the theories that are alleged in Counts 1, 2, and 3 of Plaintiff's Second Amendment Complaint viable? Not the question that counsel raises at the end, what does it ultimately mean? Plaintiff needs to allege a viable cause of action. Plaintiff has alleged three, none of which, in my opinion, are viable under the allegations of the complaint. First, Count 1 alleges promissory estoppel. Obviously, promissory estoppel requires reliance on a promise to one's detriment. In the case of Chicago Magazine Service v. City of Chicago, the Illinois appellate court for the 1st District explained that a governmental legislative action cannot form a basis of reasonable and or detrimental reliance. And under Section 10-20.5 of the Illinois School Code, and as this court recognized in the case of Thomas v. Board of Education of School District 1, a governing body like the Board of Education, it legislates through its policies. And that's, its legislative function is to create its board policy manual. So the policies therein are legislative acts by the governing body, by the elected school board. The administration of those policies is carried out by the superintendent and the administrators. But those are legislative acts. And including 5.210, which is a legislative act of the board, therefore it cannot be reasonably or detrimentally relied upon because it's subject to change. Unilaterally, it often changes. On an annual basis, there's multiple amendments to the board policy manual. And so because it's subject to change, then it cannot form the basis of the detrimental reliance that the plaintiff alleges under Illinois law. Now, the plaintiff intends that the promissory stop complaint is nevertheless viable under the Supreme Court's decision in Now, that case is distinguishable from the case here because that involved what type of promises were made by this private entity to an individual, to a nurse in that particular case, that converted otherwise at-will employment into a contractual employment situation. We don't have that here. We have a public entity. We don't have an employee who is an at-will employee. She has rights under the school code. What we have is an attempt to impose a legislative act as a contractual promise. And the appellate court in Untersheets v. City of Chicago distinguished Dovaleo on that basis. And they said that they held that the law presumes that legislative action is not contractual in nature. And the Illinois Supreme Court similarly distinguished Dovaleo in holding that a Board of Education policy did not create a contractual right in Fumarolo v. Chicago Board of Education. So the fact remains is to count one, the plaintiff's second amendment complaint fails to sufficiently allege promissory stop because it's based upon a legislative act of a government body. Similarly, with respect to count two, which alleges implied contract, the same were applied. It's similarly based upon a legislative act of a government body that is subject to change unilaterally. And so under the same argument as to count one, if contracts applied to the fact are actual contracts, if here we already have the status of Illinois law saying that legislative act cannot be considered contractual in nature. Now, Howard was also cited because it did speak to the general proposition that implied contracts were not recognized for one of the parties of the local governmental entity. But even if it were, the legislative act cannot form the basis of that implied contract. Now, with respect to count three, under the Illinois Wage Payment and Collection Act, counsel correctly notes that section two of that act pertinently provides that wages subject to the act must result from, quote, an employment contract or agreement. The first district has said that an agreement is broader than a contract, but it still requires a manifestation of mutual assent on the part of the two or more persons. But in this case, again, while it doesn't, we don't have a contract because it's a legislative act. We don't have a mutual assent between two or more persons because we have an employee who is employed in 2002 and then we have unilateral action, legislative action by the Board of Education. There is no mutual assent. It doesn't rise to the definition of wages under the Wage Payment and Collection Act. And the case law that's relied upon by the plaintiff is an opposite because, for instance, the Lawrence case, that was under a collective bargaining agreement. That was a contract. That wasn't under a policy that can't serve as a basis for a contract claim. So, alternatively, with respect to 2619, I think the trial court was correct in noting that we have a complaint that's based expressly on a policy that was enacted in 2006 and a complaint that began in August of 2002. Even the comment that was made by counsel during his argument earlier about some other similar policy, that was the date provided was October of 2002. So that came later than employment. But nevertheless, I believe that the counts one, two, and three were properly dismissed because not one of those three theories is viable. Now, is there another viable theory? That is not for the defendant to allege. The defendant can only react to what is alleged. And that's what the defendant has done. And I think the trial court probably dismissed the plaintiff's second amendment complaint. Therefore, for those reasons, and those set forth in the brief, the defendant, appellee, St. Louis School District Number 189, respectfully requests that this court affirm the St. Clair County District Court's dismissal of plaintiff's second amendment complaint. Thank you. Thank you, counsel. Thank you, Your Honor. Thank you, Your Honor. I will very briefly respond to only a few matters that were raised in counsel's argument. The first is that the cases that are cited with regard to the prompts or estoppel claim and reliance on the promise, the Chicago limousine matter, while there is a presumption against a policy or an enactment of a governmental body to constitute either a contract or, in this case, a promise, the court will do so even against or especially against a governmental entity in order to prevent fraud or injustice. And I would say that the circumstances of this case are one of those types of instances where a person provides a good period of time of service to a governmental entity as an employee and seeks to obtain the benefit of a policy that seems to offer a severance to that employee. And it would seem to me that the only people that would be harmed by this seeming policy to offer a severance, which in fact isn't an offer at all according to the defendant district, are those that qualify for the severance. And if you read the policy, those are the people that have worked the longest. So if you have to work 11 years, you have to have 11 years of service to the district to qualify in the first place, but then the scheme that's set forth in the policy is the percentage of your unused sick leave increases as your years of service increase to the point where, with my client's period of service to the district, it's at the maximum level. So the people that suffer a detriment in the greatest degree would be somebody like in the position that my client's in, where she has provided the maximum amount of service. I think that is an unjust result. And I think that the court should be cognizant of that with regard to whether the cases such as Chicago limousine and other cases cited in fact stand as a broad prohibition against legislative action forming a promise or forming a contract. I also want to make sure that the court understands that with regard to the argument that the defendant district has made, that the policy is an extension of legislative action. I take no issue with that. But as an extension of that, there's an understanding that the governmental entity should always be able to change its policy. I take no issue with that. I point out simply that, in this case, the school board, the governmental entity, did not change its policy. The policy that was in effect was the one that was promulgated in 2006. It was in effect when my client retired in 2012. Counsel, let me ask you this. I was looking at your complaint. In count one, you indicated it was widely disseminated, its policy to its employees. And in count two, on the breach of implied contract, you were more specific and said the district put it in the district board policy manual. You made the argument that it was a specific policy, set out a number of years, the school shall pay. Does it make a difference on dissemination and how that was disseminated on any of your theories? Well, again, to the extent that the pleading leaves the impression that perhaps one or the other of the claims turns differently on how it was disseminated, it was factually, as I understand it, the policy was made a part of the manual. The manual itself was given to all administrative employees, including my client. So to the extent that it was done widely, it's in that sense. Does it matter how it was disseminated for purposes of promissory estoppel? Well, I would say it does in the sense of how reasonable is somebody's reliance if they alone know about a policy and nobody else does versus the entire number of administrative employees know about it. So I answer that affirmatively. Thank you, Counsel. Thank you. Counsel, thank you for your arguments and for your good briefs. We'll take this matter under advisement and issue a ruling in due course and the court will be in recess until 1.